**VIA ECF**

> Hon. Gabriel W. Gorenstein
> United States District Court
> Southern District of New York
> 500 Pearl Street
> New York, NY 10007

### Re: Cohen v. Action Squared et al., No. 23-CV-10359 (JPC) (GWG)

Plaintiff has revised and reduced the length of the proposed Second Amended Complaint complaint to 102 pages.

Plaintiff writes in accordance with Your Honor's Individual Rules of Practice seeking a pre-motion conference for a motion for leave to amend. Plaintiff has attached his revised proposed Second Amended Complaint (aka 2AC).

The new claims are

- Fraudulent Inducement (of a copyright license) against MoveOn

- RICO 1962(a) Investment of proceeds into enterprise Civitech, against Nathan Woodhull, Civitech, AFL-CIO, MoveOn, Netroots Nation.

Plaintiff also shows cause for certain aspects.

Defendants' racketeering began in 2012, at the outset of the project and lasts almost 8 years. Their schemes often used proxies, parallel conduct, and their wire fraud was subtle. Pleading wire fraud requires particularity. In some cases, Plaintiff decided that the best approach is to include verbatim quotes along with his interpretation, so the court may make its own assessment.

The goals of Defendants racketeering include gaining gatekeeper powers over economies of scale that constitute essential resources for candidates who run for election. In addition to misappropriation, Defendants' racketeering has anti-competitive effects. As a result, Plaintiff makes both racketeering (RICO) claims and an antitrust claim.

Plaintiff's professional experience and accomplishments in the discipline of interoperability standards, which is the same discipline as OSDI are relevant to the complaint. They were an essential component of why Plaintiff was able to create OSDI and succeed where previous efforts had failed.

They also created the opportunity for exploitation by Defendants. When they found themselves unable to undermine the project to achieve their goals, Defendants' extortion, fraud and Abuse of Process were a continuation of Defendants' efforts to incite conflict to undermine the OSDI project, allowing them to separate the OSDI application ecosystem from its governance policy, and misappropriate the essential IP, which is mostly Plaintiff's authorship.

The market background section contains news quotations which illustrate the power dynamics and tensions in place when OSDI started. The anticompetitive effects section

        also includes some as well to illustrate the change in the market.

12. The diagrams of NGPVAN's architecture are relevant to the complaint because they illustrate the self-preferencing vulnerability that Defendants' scheme exploited to serve their goals, and how Plaintiff mitigated those schemes.

13. The context of the Data War is relevant to the complaint because it added to Defendants' motive for extortion and fraud. As the largest REST based application ecosystem, an economy of scale, the looming data war would foreseeably result in competing interests seeking dominant control of the OSDI ecosystem. That came true when Reid Hoffman's Political Director Dimitri Mehlhorn took an interest in 2017.

14. The use of weaponized disinformation tactics, false flags, and other tactics copied from Russian actors is relevant to the complaint because there is overlap between people and organizations who were simultaneously running false flags to influence elections while participating in this racketeering. These tactics provided the means for Defendants to achieve their outcomes.

- Netroots Nation 2017 is the origin of the effort to clone those tactics.
- Beth Becker lured Plaintiff onto the Google Group where Brian Young was. Becker ran the social media campaigns for the fake "Dry Alabama" false-flag in 2017.
- VC Acronym announced Lightrail. Acronym and its "Courier News" were part of those experiments.
- Defense counsel Schary simultaneously served as counsel in Gubarev v. Buzzfeed, a matter related to GRU efforts to hack the DNC described in the Christopher Steele memo aka Trump Dossier.
- The experiments were funded with Reid Hoffman's money, which was being disbursed by Dimitri Mehlhorn, who Plaintiff rebuffed in August 2017.

15. Defendants executed a successful false-flag operation (Cohen v. Swirling) in federal court and their extortion scheme created a foreseeable risk of inciting violence towards Plaintiff, which they used to facilitate coercion.

16. The value of what Defendants misappropriated and the gatekeeper powers they gains are sufficient motive motive for extortion, fraud or violence.

17.

18. Respectfully Submitted,

19. /s/ Josh R. Cohen